DECORSO v. BOOTH et al.

No. 6040.  Decided May 29, 1939.  (91 P. 2d 449.)

164

*P. LeRoy Nelson,* of Ogden, for appellant.

*John A. Sneddon* and *LeRoy B. Young,* both of Ogden, for respondents.

BRONSON, District Judge.

This is an action brought to recover upon a bond given to secure the release of certain property seized upon a writ of attachment. The facts are these: On May 3, 1933, an action was filed in the District Court of Weber County by

Aldo Decorso, plaintiff and appellant herein, against Clayborne Thomas, Virgil Thomas, and Sam Decorso, copartners, doing business as the D. & T. Spring Salt Company to recover the sum of $1818.70 for work and labor performed. On the same day plaintiff caused a writ of attachment to be placed in the hands of the sheriff of Box Elder County, who executed the same by levying upon property of the partnership consisting of about 6000 salt sacks, 500 sacks of salt stacked in the open on the company's salt beds, 400 sacks of salt stored in a shed on the premises, 250 tons of salt in piles, one grain chopping machine, and a quantity of twine.

On or about June 1, 1933, a bond for the release of said attached property was executed by Virgil Thomas, Abe Booth, and F. Booth, his wife, which after preliminary recitations is conditioned as follows:

"Now, therefore, the undersigned * * * in consideration of the release from attachment of the property attached * * * and the discharge of said attachment promise that in case the said plaintiff recovers judgment in said action, the said defendant will, on demand redeliver such attached property so released to the proper officer, to be applied to the payment of the judgment, and that in default thereof the said defendant and sureties will on demand pay to the said plaintiff the full value of the property released not exceeding the amount of said judgment."

Thereupon the property so attached was by the Court ordered released to the defendants therein, who immediately took it into their possession. The plaintiff recovered judgment in said action against the defendant partnership for $1770 with interest and costs, which said judgment was entered January 12, 1934.

The property released from the attachment was all disposed of by the defendants therein during the months of June, July, and August of 1933.

During all the time in which the above proceedings were in progress a suit was pending in the District Court of Weber County for the dissolution and winding up of the

affairs of the defendant partnership, and on March 10, 1934, slightly less than two months after plaintiff recovered his judgment against the partnership, a receiver was appointed to take charge of all the property and improvements of the defendant company and, with the general powers usually granted to receivers, to wind up the affairs of the company. On or about August 24, 1937, and while the company was still in receivership the plaintiff herein made demand upon the defendants herein to deliver to him the property that had been attached and released, or in default to pay to him the full value thereof at the time of its release, to be applied upon the balance of said judgment. The defendants refused to do either.

While, as has been heretofore stated, all of the property released from the attachment was disposed of by September of 1933, including the salt in piles and the sacked salt, there was upon the premises of the defendant company at all times up to March 10, 1934, the date the receiver took charge of the company's property, salt equal in quality and in excess of the quantity attached.

During the year 1935 the plaintiff herein filed two claims with the receiver for the defendant company by virtue of his judgment of January 12, 1934, and upon approval of the Court received an aggregate of $320.59 to apply thereon. This was the only step ever taken by the plaintiff to collect on the judgment, and plaintiff took no steps to enforce the bond until the demand made August 24, 1937. Upon defendants' refusal to comply with the demand as above set forth plaintiff instituted suit to recover on the bond.

The trial court concluded that by reason of the property being in possession of the receiver and in custodia legis since the 14th day of March, 1934, and in such custody at the date of demand and ever since, it was impossible for said defendants to redeliver the property upon demand and that because of the impossibility of performing the condition of the bond with respect to redelivery of the property the defendants were released from all liability on the bond. Judg-

ment was entered in, favor of defendants and against the plaintiff, and from a motion denying a new trial this appeal was prosecuted.

The question of whether or not the released property came into the hands of the receiver on March 10, 1934, and then and at all times thereafter was in custodia legis is first considered. The evidence is clear and the court found that all of the attached property, including the salt in piles and the salt in sacks, had been disposed of prior to the date plaintiff secured judgment on January 12, 1934. However, it is contended by the defendants that inasmuch as there was available at all times between the date of the judgment and the appointment of a receiver a quantity of salt equal in quantity and in excess of the amount attached and released that defendants could have discharged their liability to redeliver the released property had demand been made upon them between January 12, 1934 and March 10, 1934, and because plaintiff failed to make such demand he should now be estopped to recover upon the alternative condition of the bond. It is urged by defendants under the theory of fungible goods that the salt in their possession between January 12, 1934, and March 10, 1934, being of like nature and quantity and quality although not the same salt attached, could have, had the demand been made by plaintiff, been delivered in satisfaction of their undertaking. The fallacy of defendants' position should be apparent. Assuming, without finding it necessary to decide, the defendants' theory of fungibility is valid with respect to the salt, the redelivery of the salt without redelivery of the sacks, the grain chopping machine, and the twine would not have satisfied their obligation. An examination of the record discloses that the sacks, the grain chopping machine, and the twine represented a substantial part of the total value of the property which had been released to the defendants. These items after the release of the attachment came into the hands of the judgment defendants to do with as they saw fit, which they proceeded

to do by disposing of them. They were bound to return all of the property to discharge themselves of liability, and the conditions of the bond could not be complied with by an offer to return, or the return of a portion of it. The rule is well settled. *Metrovich* v. *Jovovich*, 58 Cal. 341; *Mullaly* v. *Townsend*, 129 Cal. XVIII, 61 P. 950, 62 P. 119; *Bland* v. *Creager*, 13 B. Mon., Ky., 509; 1 Shinn on Attachment and Garnishment, p. 555; *Jones* v. *Short*, 53 Or. 525, 101 P. 209; 7 C. J. S., Attachment, § 316. In *Jones* v. *Short*, supra, the court went the length of holding that a tender of part of the released property and offer to pay the value of the remainder does not satisfy such a bond as that under consideration although the remainder had been sold because perishable.

It thus appears that while it was impossible for the defendants to perform the condition of the bond to redeliver the property, such impossibility was a result of the judgment defendants' acts, and this condition of affairs existed long prior to the appointment of the receiver over the judgment defendants' property. The receiver never had possession or control over the property which it was essential should be returned by defendants if their obligation was to be discharged by the return of the property. The property never was in custodia legis and it thus becomes unnecessary to consider or decide whether or not the defendants would be relieved of all liability on the bond for such reason.

The question of whether or not the plaintiff was required to make a demand, and if so whether such demand was timely made is also presented. Calling attention again to the provisions of the bond it will be noted that the engagement on the part of the defendants was that should plaintiff recover judgment, "the said defendants will *on demand* redeliver such attached property so released to the proper officer, to be applied to the payment of the judgment, and that in default thereof the said defendant sureties will *on demand* pay to the said plaintiff the

full value of the property released, not exceeding the amount of said judgment." (Italics added.) The plain language of the bond requires a *demand* to redeliver and in default a *demand* to pay the value of the property released. *Mullally* v. *Townsend,* 119 Cal. 47, 50 P. 1066, affirmed 129 Cal. XVIII, 61 P. 950, 62 P. 119; *Pierce* v. *Whiting,* 63 Cal. 538. See, also, 3 Cal. Jur. 519.

Plaintiff contends, first, that because the property was was disposed of prior to his recovering judgment no demand was necessary; and, second, that even though a demand was necessary it could be timely made at any time before the period of limitations had run. From what has already been said herein it is clear that the defendants never could have complied with the demand to deliver the released property as they had by their own acts rendered themselves incapable of doing so before plaintiff recovered judgment. The law does not require the doing of a vain and useless act, and under such circumstances, a demand to return the released property was unnecessary. *Mutual Oil Company* v. *Hamilton,* 73 Mont. 385, 236 P. 545; *Driggs* v. *Harrington,* 2 Mont. 30; *Pue* v. *Wheeler,* 78 Mont. 516, 255 P. 1043, certiorari denied 275 U. S. 483, 48 S. Ct. 19, 72 L. Ed. 385.

Nonetheless the defendants were entitled to a demand to pay the value of the property released and disposed of, and an opportunity to comply therewith before being subjected to suit thereon. *Mullally* v. *Townsend,* supra. It is not disputed that a proper demand was made August 24, 1937, upon defendants to redeliver the released property, or pay to plaintiff the value thereof. Defendants pleaded that because of plaintiff's failure to make demand upon them to return the property until approximately three and one-half years after judgment he should now be estopped from recovering upon the alternative condition of the bond and cross-assign as error the failure of the trial court to find upon this issue. Defendants argue that because of the appointment of the receiver on March 10, 1934,

and his taking possession of the released property, that they were thereafter unable to perform, the property being in custodia legis and that plaintiff was required to make the demand for the return of the property between January 12, 1934, the date of his judgment, and March 10, 1934, the date of the appointment of the receiver. Defendants' position is untenable. As has been indicated, at no time after plaintiff secured his judgment could defendants have complied with the provisions of the bond requiring delivery of the property, and neither the failure of plaintiff to demand the return of the property thereafter or the appointment of a receiver at a later date in any way could have operated or did operate to defendants' prejudice in this particular.

What then was the situation on January 12, 1934, the date of plaintiff's judgment? The defendants were in such a position that the only possible way in which they could discharge their liability under the bond was by the payment of money, i. e., the payment of the full value of the property released to apply on the judgment. The defendants do not claim prejudice because of plaintiff's delay in demanding performance of the condition of the bond requiring simply the payment of money, nor do they present or suggest in any way any facts or evidence upon which an estoppel might be based with respect to this demand. Defendants' only claim is that they were prejudiced and plaintiff should be estopped and barred from holding them on the bond now, solely because of the delay "of the plaintiff in making demand upon the defendants for the return of said property." No claim is made that they were prejudiced by the delay in plaintiff's demanding performance of the alternative condition of the bond and no reasons given why plaintiff should now be estopped from seeking recovery on the condition of the bond requiring simply the payment of money. The question of whether or not the demand for the performance of the condition of the bond requiring the payment of the value of the property released was timely has not been raised and is not decided.

Defendants further cross-assign as error the failure of the court to find in their favor upon their allegation that plaintiff was "barred and estopped" by reason of having filed claim with the receiver for the company on his judgment and upon which he was paid an aggregate of $320.59 in the year 1935. No authority is cited. It is sufficient to say that the record discloses no way in which the defendants were injured by the efforts of plaintiff to collect upon his judgment from the judgment debtor before proceeding against the defendants upon the bond. Why should the plaintiff be penalized because he sought to collect his judgment by other means before resorting to the bond? In *Chittenden* v. *Royal Indemnity Company*, 247 Mass. 265, 142 N. E. 54, it was held that sureties on a bond were not discharged by *failure* to pursue other available means to collect the judgment before resorting to the bond a fortiori, the sureties have no complaint when the judgment creditor does take such other steps, at least in the absence of a showing they were prejudiced thereby. As was said in the above case:

"It is plain a surety on a bond to dissolve an attachment has no legal or equitable right which can be impaired by the failure of the creditor or the debtor in the action or suit to make use or abandon the use of any collateral methods to collect his debt or judgment against such debtor. The creditor may enforce the claim by any and every legal method until its satisfaction."

The trial court found the value of the released property to be $1317 as of the date of its release. Defendants in their cross-assignments of error assail this finding and complain of the trial court's action in adopting plaintiff's evidence with respect thereto rather than the evidence adduced by defendants upon the subject. The evidence thereon was in conflict and while it cannot be determined from the record by what process of computation the court determined upon the particular figure of $1317, there was sufficient substantial evidence to support a finding for even a larger amount had the court made a

finding in a larger amount. The trial court may determine the facts and judge the credibility of the witnesses, and the rule is so well settled that findings, if supported by any substantial evidence, will not be disturbed on appeal that citation of authorities should not be necessary.

Defendant moved to dismiss the appeal upon the grounds that Sam Decorso was not served with notice of appeal. We find no merit in the motion. He was not served with summons and did not appear in the court below.

It appears from what has here been said that the judgment appealed from should be, and the same is, reversed. The cause is remanded to the District Court of Weber County with directions to grant a new trial. Appellant is awarded his costs on appeal.

MOFFAT, C. J., and WOLFE, LARSON, and McDONOUGH, JJ., concur.

PRATT, J., being disqualified, did not participate herein.